# STATE OF CONNECTICUT *v.* MARTIN V.[1]
## (AC 26870)

Gruendel, Harper and Berdon, Js.

Argued January 10—officially released July 17, 2007

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

*Annacarina Del Mastro,* senior assistant public defender, for the appellant (defendant).

*Michele C. Lukban,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Anne F. Mahoney,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BERDON, J. The defendant, Martin V., appeals from the judgments of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] The defendant claims that the trial court (1) improperly admitted evidence of prior uncharged misconduct by taking judicial notice of a court order prohibiting him from having contact with his daughters, the victims, and (2) gave an improper explanation of

---

[2] We note that the defendant was found guilty of three counts of risk of injury to a child in connection with acts that occurred between November, 1999, and November, 2002. Although the acts that occurred between November, 1999, and January, 2001, were covered by General Statutes (Rev. to 1999) § 53-21 (2), and the acts that occurred between and January, 2001, and November, 2002, were covered by General Statutes (Rev. to 2001) § 53-21 (a) (2) and General Statutes (Rev. to 2001) § 53-21 (a) (2), as amended by Public Acts 2002, No. 02-138, § 4, those provisions are identical. In the interest of simplicity, we refer to the current revision of the statute, which is the same as the provisions under which the defendant was convicted.

the constancy of accusation doctrine to the jury. We affirm the judgments of the trial court.

This case involves the alleged sexual abuse by the defendant of his three minor daughters, M, S and A, over the course of several years.[3] Between March and November, 2002, three complaints were received by the department of children and families (department) that the defendant physically (but not sexually) abused family members.[4] Sometimes the defendant would strike M so hard with a belt that it left marks on her back. The children were frightened of him. Following the third complaint in November, 2002, the department removed the children from the defendant's home and placed them in foster care. Despite the history of physical abuse, the department planned to reunite the family.

On February 21, 2003, three months after placement in foster care, the daughters first claimed they previously had been sexually abused by their father. M told her foster mother and a social worker, Betsy Dela Cruz, that the defendant had sexually abused her and her sisters. M testified at trial that the defendant had vaginal sexual intercourse with her on a daily basis when she was between twelve and fourteen years old. S testified that the defendant had both vaginal and anal intercourse with her many times when she was between ten and twelve years old. A testified that the defendant had touched her private parts. The defendant was arrested and charged pursuant to these allegations.

The principal evidence against the defendant was the testimony of the victims.[5] There was no physical

---

[3] At the time of trial, M, S and A were ages seventeen, fourteen and ten, respectively.

[4] Testimony was given at trial that the defendant frequently physically abused M and S, as well as his wife and mother.

[5] Defense counsel argued at trial that the victims had fabricated the allegations of sexual abuse in order to remain in foster care, safe from the physical abuse inflicted by the defendant.

evidence presented to corroborate the victims' stories. The state's medical expert, Elaine Yordan, physically examined the victims. She testified that none of the girls had scarring, lesions or transsection of the hymenal rim, despite allegations from M and S that they had been subjected to frequent vaginal and anal intercourse. Yordan testified that her findings neither proved nor disproved sexual abuse. She explained that the absence of scarring and lesions could have been the result of the length of time between the last opportunity for abuse and the examinations. The absence of damage to the hymenal rim may have been because M and S had started menstruating before the abuse started, which would physiologically allow a girl's hymen to elasticize and prevent such injury. Yordan stated that her findings could equally support conclusions that the girls were or were not sexually assaulted.

During trial, the state requested that the court take judicial notice of the existence of a protective order prohibiting any contact between the defendant and his daughters. The court deferred judgment on that request until further evidence was offered. Subsequently, the state offered into evidence two letters purportedly written by the defendant to M at some time after the daughters had been placed in foster care and had made the allegations of sexual abuse. M testified that the letters were delivered by her mother, but the handwriting was the defendant's. The content of the letters also made specific reference to the author's being the defendant. The court admitted the letters into evidence,[6] without objection, as relevant to show the defendant's consciousness of guilt. One letter stated: "I'm paying for being bad with you . . . ." The second letter instructed: "[W]hen you read this letter tear it up so they won't

---

[6] The original letters were written in Spanish. English translations were entered into evidence, and the parties stipulated to the authenticity of the translations.

find you with it." After the letters were read into evidence, the court reconsidered the state's request that the court take judicial notice of the no contact order. The court found that the no contact order was relevant to put the letters in context and that its probative value outweighed its prejudicial nature. Over the defendant's objection, the court took judicial notice of the existence of the no contact order barring the defendant from having any contact with his daughters.

I

The defendant claims that the court abused its discretion by taking judicial notice of the no contact order because the order, taken together with the letters written by the defendant, amounted to evidence of uncharged misconduct that was improperly admitted. The defendant argues that by taking judicial notice of the no contact order, the court improperly allowed the introduction of evidence that was not relevant to prove any of the recognized exceptions to the admissibility of uncharged misconduct and improperly prejudiced him.

As a general rule, "evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior." (Internal quotation marks omitted.) *State* v. *Merriam*, 264 Conn. 617, 659–60, 835 A.2d 895 (2003); see also Conn. Code Evid. § 4-5 (a). "In order to determine whether such evidence is admissible, we use a two part test. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of [the prior misconduct] evidence must outweigh [its] prejudicial effect . . . ." (Internal quotation marks omitted.) *State* v. *Merriam*, supra, 661. "The primary responsibility for making these determinations rests with the trial court.

We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." *State* v. *Kulmac*, 230 Conn. 43, 61, 644 A.2d 887 (1994).

Under the first prong of the test, the evidence must be relevant[7] for a purpose other than showing the defendant's bad character or criminal tendencies. *State* v. *Merriam*, supra, 264 Conn. 660–61. Recognized exceptions to this rule have permitted the introduction of prior misconduct evidence "to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." Conn. Code Evid. § 4-5 (b). The list of exceptions provided in the code of evidence is not exclusive but rather is intended to be illustrative. Id., § 4-5 (b), commentary. Our Supreme Court has also recognized an exception for prior misconduct evidence admitted to "complete the story of the charged crime by placing it in the context of nearby and nearly contemporaneous happenings." (Internal quotation marks omitted.) *State* v. *Ali*, 233 Conn. 403, 427, 660 A.2d 337 (1995).

The court found that the no contact order was relevant to put in context statements made in the defendant's letters to the victims. As to the relevancy of the no contact order for this purpose, the court stated: "It seems to me that under the circumstances, if the fact of this—the existence of this order, is considered by the jury in connection with the letter, that [the jury] could fairly put in context those statements if [the jury] drew the inference, which I think is available from the letter, that it was sent for the purpose of making illicit

---

[7] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1.

contact and potentially influencing [the victims] to go easy on him so that his problems wouldn't increase or continue." There simply is no basis for that determination.

There is no dispute that the letters evinced consciousness of guilt and therefore were relevant in determining whether the defendant sexually assaulted his daughters. See *State* v. *Schmidt*, 92 Conn. App. 665, 675, 886 A.2d 854 (2005), cert. denied, 277 Conn. 908, 894 A.2d 989 (2006). The no contact order, in turn, was relevant to the defendant's state of mind in sending the letters and making the statements therein. Prior misconduct evidence admitted under § 4-5 of the Connecticut Code of Evidence must not only be generally relevant, but must be "relevant and material to at least one of the circumstances encompassed by the exceptions"; (internal quotation marks omitted) *State* v. *Merriam*, supra, 264 Conn. 661; here, to complete the story of the charged crimes and to put other evidence in context. The only story that is completed and the only crime put in context by this evidence was the defendant's violation of the no contact order. It is true that evidence of the no contact order helped the jury understand the contents of the letters, which instructed M to tear up the letters and not show them to anyone. Such an understanding does nothing to make it more or less likely that the defendant committed the sexual assaults without the impermissible inference that his criminal tendency to violate the no contact order made it more likely that he committed the charged crimes. See Conn. Code Evid. § 4-5. Accordingly, we conclude that the no contact order amounted to evidence of uncharged misconduct that was not sanctioned by our rules and should not have been admitted into evidence.

We next consider whether the defendant has satisfied his burden of proving that the admission of the uncharged misconduct evidence constituted harmful

error. The defendant bears the burden of showing that a nonconstitutional evidentiary error, such as the improper admission of prior uncharged misconduct here, was harmful. See *State* v. *Sawyer*, 279 Conn. 331, 352, 904 A.2d 101 (2006). A nonconstitutional error is harmless when "an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) Id., 357. "In reviewing the case, we consider a number of factors, namely, the overall strength of the state's case, the impact of the improperly admitted or excluded evidence on the trier of fact, whether the proffered evidence was cumulative, and the presence of other evidence corroborating or contradicting the point for which the evidence was offered." *State* v. *Calabrese*, 279 Conn. 393, 412, 902 A.2d 1044 (2006). When the court improperly admitted uncharged misconduct evidence, "the most relevant factors to be considered are the strength of the state's case and the impact of the improperly admitted evidence on the trier of fact." *State* v. *Sawyer*, supra, 358.

Our Supreme Court has recognized that sexual assault cases are not strong when there is no conclusive physical evidence and the victim is a minor. *State* v. *Ritrovato*, 280 Conn. 36, 57, 905 A.2d 1079 (2006). In the present case, three minor victims testified with consistent stories. In addition to the testimony of the three victims, the state presented the letters written by the defendant to one of his daughters as evidence of the defendant's consciousness of guilt. Without any physical evidence of the assaults, we cannot characterize the state's case as extremely strong, although it was sufficient to support the jury's verdict. See *State* v. *Dews*, 87 Conn. App. 63, 73, 864 A.2d 59 ("[t]he testimony of [two minor victims] that the defendant touched their genitals was sufficient evidence for the jury to determine that the defendant committed sexual

assault"), cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

The improperly admitted misconduct evidence did nothing to bolster the state's case or impact the jury's decision making. The defendant argues that evidence of the no contact order permitted the jury to infer that he had previously committed similar acts of sexual abuse against his daughters as charged in the present case. There is no reason to assume that the jury would have made such an inference. The court guarded against any such prejudice caused by the order by describing it as "a standard order in cases such as these . . . ."[8] This description minimized the defendant's concern that the order could imply that the defendant had committed similar acts of sexual abuse. Also, the jury reasonably could infer that the order was directly related to the charged crimes because it was issued shortly after allegations of sexual abuse were made.

Through evidence that there was a no contact order, it was also possible for the jury to infer that the defendant had engaged in illegal conduct by sending letters to his daughter. Even if the jury made such an inference, this evidence does not have "a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury . . . ." (Internal quotation marks omitted.) *State* v. *Ellis*, 270 Conn. 337, 367–68, 852 A.2d 676 (2004). In this case, in which the jury heard testimony that the defendant frequently had vaginal and anal intercourse with his daughters and physically abused his daughters, wife and mother, there is little risk that evidence of the comparatively minor offense of violating a no contact order by sending two letters would have a tendency to excite the passions, awaken

---

[8] The court stated: "I am taking judicial notice of the fact that on and after March 7, 2003 . . . the defendant was subject to a standard order in cases such as these that he have no contact with any of his three daughters in any manner. That is the fact that I am taking judicial notice of."

the sympathy or influence the judgment of the jury. Further, the relative unimportance of the evidence of the no contact order is highlighted by the fact that neither the state nor the defense mentioned it in closing arguments.

Indeed, evidence of the no contact order may have mitigated the damaging effect of the letters, providing some benefit to the defense. The letters were admitted without objection as evidence of the defendant's consciousness of guilt, in part, because in the letters the defendant apologized for his conduct. The suggestion is that the defendant wanted his daughter to hide the letters because they contained an implicit admission of guilt as to the sexual assault and risk of injury charges. When this statement in the letter is combined with the no contact order, however, the jury could have inferred that the defendant sought to avoid detection of the letters because they were in violation of the no contact order, a somewhat more benign reason.

In comparison, in *State* v. *Jacobson*, 87 Conn. App. 440, 454–55, 866 A.2d 678, cert. granted, 273 Conn. 928, 873 A.2d 999 (2005), the court found that certain improperly admitted evidence of prior misconduct was harmless. There, the court held that it was improper to admit a mother's testimony that her son, who was not the victim of the sexual assault crimes on trial, had stayed overnight at the defendant's home and slept in the same bed with him. Id., 455. The evidence was harmless because it was limited in quantity, and the mother never alleged that the defendant had abused her son. Id. Therefore, the evidence of prior misconduct did not have "a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury . . . ." (Internal quotation marks omitted.) Id.

Because the state presented a sufficiently strong case through the testimony of the children and the improperly admitted misconduct evidence had at best a minimal impact on the jury, we hold that the error was harmless.

II

The defendant claims that the court gave an incorrect explanation of the constancy of accusation doctrine in the limiting instruction and final charge to the jury.[9] The defendant argues that the instructions improperly permitted the jury to use constancy testimony to determine the credibility of the victims generally, not simply their credibility as to the fact that they reported the sexual abuse.[10] We hold that the instruction properly limited the jury's use of constancy evidence.

The state presented two witnesses, Dela Cruz and Lisa Murphy-Cipolla, as constancy of accusation witnesses. Dela Cruz testified that on February 21, 2003,

---

[9] The defendant, in an additional claim, urges this court to modify or replace the constancy of accusation doctrine to preclude application when the victims are children. The defendant requests review of this unpreserved claim under the plain error doctrine and requests invocation of this court's broad supervisory powers. Although we recognize that the age of the victim is an important consideration in assessing the voluntariness of the victim's report of sexual abuse; see State v. Troupe, 237 Conn. 284, 320, 677 A.2d 917 (1996) (Berdon, J., concurring); our Supreme Court has left the admissibility of constancy evidence to the broad discretion of the trial court, which must balance the probative value of the evidence against any prejudice to the defendant. Id., 304–305. The court has done that here. Therefore, we decline to afford plain error review to the defendant's claim and will not invoke the extraordinary remedy of our supervisory powers to further trim the sails of the constancy of accusation doctrine.

[10] The defendant also argues that the jury instructions did not adequately explain the difference between substantive and corroborative evidence and did not inform the jury that it could consider the victims' delay in reporting the abuse. At trial, the defendant never objected to the instructions on these grounds and did not file a request to charge on the use of constancy testimony. Therefore, these claims are unpreserved, and we will not review them. See State v. Pereira, 72 Conn. App. 107, 112–14, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003).

M told her that the defendant had previously sexually abused M, S and A. Murphy-Cipolla, a clinical child interview supervisor at Saint Francis Hospital and Medical Center, testified that she interviewed M, S and A on March 4, 2003. Murphy-Cipolla testified that during these three separate interviews, each girl disclosed having been sexually abused by the defendant. Following the testimony of Dela Cruz and Murphy-Cipolla, and in its final charge, the court gave limiting instructions as to the use of constancy of accusation evidence. The defendant objected to these instructions, arguing that the charge improperly instructed the jury that constancy testimony could be used to assess the credibility of the witnesses.

"From its inception, the underlying purpose of the [constancy of accusation] doctrine has been to combat prejudiced notions about the credibility of sexual assault victims by allowing the state to demonstrate that the victim had reported the assault to persons in whom she naturally would confide." (Internal quotation marks omitted.) *State* v. *Hawkins*, 51 Conn. App. 248, 254–55, 722 A.2d 278 (1998), cert. denied, 281 Conn. 901, 916 A.2d 46 (2007). This is the only situation in which Connecticut "permit[s] prior consistent statements to be introduced to accredit a witness's testimony." (Internal quotation marks omitted.) *State* v. *Troupe*, 237 Conn. 284, 302 n.17, 677 A.2d 917 (1996); see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 6.37.

Our Supreme Court limited the use and scope of the constancy of accusation doctrine in *Troupe* by restricting such testimony by a person in whom the victim confided to details of the fact and timing of the victim's complaint and such details surrounding the assault as are necessary to associate the victim's complaint with the pending charge. *State* v. *Troupe*, supra, 237 Conn. 304. In *Troupe*, the court held that instructions to the jury that testimony of a constancy witness

was admissible solely to assist the jury in assessing the victim's credibility, and not as substantive proof of the alleged sexual assault, were proper. Id., 290 n.6.

In this case, the testimony of Dela Cruz and Murphy-Cipolla was limited to the fact and timing of the victims' complaints. Following that testimony, the jury adequately was instructed that the testimony of these constancy witnesses regarding out-of-court statements made by the victims could be used only to evaluate the credibility of the victims, not for substantive purposes.[11]

---

[11] After Dela Cruz testified, the court instructed the jury: "This testimony that you have heard with respect to out-of-court statements by the two girls, [M] and [S], is admitted before you not to prove the truth of the contents of their statements, of their out-of-court statements, but to corroborate the fact that at a certain period of time, they made a complaint. As you may consider that evidence bearing upon their credibility here and thus to corroborate their testimony, their description of what they claim to have happened will rest upon its own footing. This testimony, then, goes only to their credibility as people who made a complaint. It is not a substitute in substance for whatever they say, and it may not be considered for substantive purposes."

After Murphy-Cipolla's testimony the court gave the following instruction: "[W]ith this testimony as with the testimony of the other witness yesterday whom I instructed you on, this is not being offered for the truth of its contents. This testimony is being offered to show that these statements were made, if you conclude in fact that they were made. They are introduced solely to corroborate the complaint and to indicate that there was a time when this complaint that underlies this action was brought. It will be for you to determine whether or not to credit the testimony. You're to determine how to assess it, you're to determine whether or not in fact it corroborates anything that has been testified to by any of the witnesses. And that you will do as part of your obligation to assess the credibility of the witnesses when it comes time for deliberation. But none of the particulars that were said are introduced to prove the truth of any of those statements because that, of course, would be hearsay."

During the final charge to the jury, the court stated: "Evidence was presented as to certain out-of-court statements allegedly made by some of the complainants to a [department] social worker, Betsy Dela Cruz, and a forensic interviewer associated with the children's center at Saint Francis Hospital [and Medical Center], Lisa Murphy, concerning the time, place and general nature of the defendant's alleged sexual abuse of them. These statements were not admitted into evidence to prove the truth of their contents, but only to corroborate the witness' trial testimony and, thus, to affect their

The court properly limited the scope of the testimony of constancy witnesses and instructed the jury as to the limited use of such testimony.

The judgments are affirmed.

In this opinion the other judges concurred.

credibility, if you choose to so regard them. Thus, they cannot lawfully be used for any other purpose in the course of your deliberations."