******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID BLINN *v.* DESH SINDWANI
(AC 40985)

Alvord, Keller and Beach, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for negligence
in connection with personal injuries sustained by the plaintiff in an
automobile accident that occurred in 2012. The plaintiff alleged, inter
alia, that the accident caused him to suffer mental anguish and exacer-
bated preexisting conditions of anxiety and depression, for which he
sought treatment in 2014 and 2015. During trial, the parties had agreed
to enter into evidence certain treatment records of a mental health
treatment provider from whom the plaintiff sought counseling in 2104
and again in 2015 and 2016. The treatment records contained references
to various incidents of the plaintiff's prior misconduct, including a prior
conviction of operating a motor vehicle while under the influence of
intoxicating liquor or drugs, and a citation he had received for his alleged
involvement in a 2014 motor vehicle accident. The trial court sustained
the defendant's objections to the plaintiff's motions in limine, which
sought to exclude all references to his prior convictions and misconduct,
as well as the citation. After the jury returned a verdict in favor of the
plaintiff, the trial court rendered judgment in accordance with the ver-
dict, from which the plaintiff appealed to this court. *Held*:
1. The plaintiff's claim that the evidence of his prior misconduct should
   have been precluded was unavailing; the prior misconduct evidence was
   relevant to the issue of whether the 2012 accident caused emotional
   distress for which the plaintiff claimed damages and sought treatment
   in 2014 and 2015, as it tended to show that the plaintiff's treatment at
   the mental health service provider did not result from the 2012 accident
   but, rather, resulted from other events and stressors in his life, including
   the prior misconduct, and the trial court properly determined that the
   probative value of the evidence outweighed its prejudicial effect and
   did not abuse its discretion in sustaining the defendant's objection to
   the plaintiff's motion in limine with respect to the plaintiff's prior convic-
   tions and other misconduct.
2. The trial court did not abuse its discretion by admitting evidence of the
   2014 motor vehicle citation; the citation was relevant to the damages
   element of the plaintiff's claim because it tended to make it less probable
   that the plaintiff's treatment with the mental health provider resulted,
   in whole or in part, from the 2012 accident, and the trial court did
   not abuse its discretion in determining that the probative value of the
   evidence outweighed its prejudicial effect, as the plaintiff testified that
   the citation was particularly stressful because of its bearing on his
   probation status and the custody of his child.

Argued March 19—officially released September 10, 2019

*Procedural History*

Action to recover damages for the defendant's alleged
negligence, brought to the Superior Court in the judicial
district of Tolland, where the court, *Farley, J.*, sustained
the defendant's objection to the plaintiff's motions in
limine to preclude certain evidence; thereafter, the mat-
ter was tried to a jury; judgment for the plaintiff, from
which the plaintiff appealed to this court. *Affirmed.*

*Blake A. Driscolli*, with whom was *Peter J. Brown*,
for the appellant (plaintiff).

*Julie Harris*, with whom, on the brief, was *Yelena
Akim*, for the appellee (defendant).

*Opinion*

BEACH, J. In this personal injury action arising out of an automobile accident, the plaintiff, David Blinn, appeals from the judgment of the trial court rendered following a jury verdict against the defendant, Desh Sindwani. The plaintiff claims that the court erred by sustaining the defendant's objection to his motions in limine that sought to preclude evidence of the plaintiff's (1) prior misconduct and (2) citation arising from a motor vehicle accident that occurred on June 6, 2014, which resulted in a violation of the plaintiff's probation stemming from a 2013 conviction for operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a. We affirm the judgment of the trial court.

The following facts which the jury reasonably could have found and procedural history are relevant on appeal. On June 15, 2012, the plaintiff was operating his motorcycle on Route 83 in Rockville, Connecticut. As he traveled northbound, he approached Pease Farm Road in Ellington on his right. The defendant was stopped at a stop sign on Pease Farm Road waiting to proceed onto Route 83. As the plaintiff approached the intersection, the defendant pulled out from the stop sign. The plaintiff struck the defendant's driver's side rear door and was ejected from his motorcycle. The plaintiff commenced this action alleging that the accident was caused by the defendant's negligence in the operation of his motor vehicle. The plaintiff sought, in pertinent part, damages for mental injuries suffered as a result of the accident. Specifically, the plaintiff alleged that the accident caused him mental anguish and exacerbated preexisting conditions of anxiety and depression. The defendant filed a special defense alleging that the plaintiff's negligence contributed to the accident and damages.

The parties agreed to enter into evidence certain treatment records from Community Health Resources (CHR), a mental health services provider, from whom the plaintiff sought counseling from January 7, 2014 through December 10, 2014, and again from July 9, 2015, through October 12, 2016. These treatment records contained references to various incidents of the plaintiff's prior misconduct, including a ten month term of incarceration for felony larceny, harassment charges, and operating a motor vehicle while under the influence, as well as a citation for driving an unregistered vehicle.

Claiming lack of relevance, remoteness, and high potential for prejudice, the plaintiff filed a motion in limine to exclude all references to his prior nonfelony convictions, arrests, and misconduct. The plaintiff filed a second motion in limine to exclude all references to a citation that he received for his alleged involvement in a motor vehicle accident that took place on June 6,

2014, which the plaintiff said could be used to suggest that he was involved in a subsequent motor vehicle accident and that his alleged injuries were the result of that accident, or to suggest bad character. The plaintiff also argued that evidence concerning the June 6, 2014 citation was a collateral matter that would distract the jury and unduly prejudice him.

The defendant objected to the plaintiff's motions in limine, asserting that both the evidence of prior misconduct and the evidence of the 2014 citation would not be offered for any impermissible use, such as showing bad character but, rather, to dispute the claim that the earlier accident that was the subject of the trial was a cause of the plaintiff's emotional distress and a reason he sought psychotherapy at CHR. The defendant argued in opposition to the motion in limine that "[t]o permit the plaintiff to proceed with a claim that the therapy he had at CHR was due to the 2012 accident, and that his ongoing anxiety and distress was due solely to injuries he suffered in that accident, without permitting the defendant to introduce alternative explanations for the plaintiff's treatment and distress, which explanations *appear in the treatment record itself*, would be a miscarriage, as it is highly probative of the plaintiff's damage claim and is admissible for that reason." (Emphasis in original.)

The court sustained the defendant's objection for the reasons stated in the objection but limited the defendant's use of the misconduct evidence to that which was related to anxiety and depression and was contained in the treatment records. Further, the court ordered that the defendant was not to introduce into evidence facts of the incidents themselves, but rather only the proceedings that were triggered by those underlying incidents and any effects that they may have had on the plaintiff's mental health.

At trial, the plaintiff offered into evidence treatment records regarding his sessions at CHR between January 7, 2014, and October 12, 2016. The treatment records indicated that the plaintiff was ordered by the court, in connection with dissolution proceedings, to attend treatment at CHR.[1] The plaintiff also submitted bills for mental health treatment that he had received at CHR and Manchester Memorial Hospital totaling $20,708.61.

When asked on direct examination about his mental health and treatment history, the plaintiff said that he had been in counseling for anxiety and mood disorders for most of his life. He also was asked specifically about what had brought him to CHR. He cited issues relating to his divorce but also testified that the accident that was the subject of this case was an additional reason why he continued to seek treatment.

On cross-examination, the plaintiff testified about various incidents of prior misconduct and their effects

on his mental health leading up to and throughout his treatment at CHR.[2] He also testified about the motor vehicle citation issued on June 6, 2014.[3] The plaintiff's counsel did not object to the introduction of such evidence at any point during the cross-examination, nor did he ask for curative instructions regarding limited use of this evidence by the jury. During closing argument, the defendant's counsel told the jury that she did not intend to disparage the plaintiff for his past. Instead, she highlighted the roles that the prior misconduct and the June, 2014 citation played in the plaintiff's seeking and receiving treatment at CHR.[4]

The jury found that the defendant was liable and that the plaintiff was entitled to damages of $58,500. The jury also found that the plaintiff's negligence was 50 percent responsible for the accident, and it reduced the total damages award to $29,250. The court accepted the verdict and rendered judgment accordingly. This appeal followed.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Russo*, 62 Conn. App. 129, 133, 773 A.2d 965 (2001). In reviewing for abuse of discretion, "the ultimate issue is whether the court could reasonably conclude as it did." *DiPalma* v. *Wiesen*, 163 Conn. 293, 299, 303 A.2d 709 (1972).

I

We first address the plaintiff's claim that evidence of his prior misconduct should have been precluded. Specifically relying on § 4-5 of the Connecticut Code of Evidence, the plaintiff argues that the evidence did not fit any of the exceptions to the general rule of inadmissibility. The defendant responds that such evidence was relevant to the plaintiff's claim that his treatment for anxiety and depression in 2014 and 2015 resulted from the 2012 accident. We agree with the defendant.

The Connecticut Code of Evidence provides, in relevant part, that "[a]ll relevant evidence is admissible, except as otherwise provided by the constitution of the United States, the constitution of the state of Connecticut, the Code, the General Statutes or the common law." Conn. Code Evid. § 4-2. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid.

§ 4-1.

"Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person . . . ." Conn. Code Evid. § 4-5 (a). However, subsection (c) of § 4-5 provides that such evidence is admissible "for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." Conn. Code Evid. § 4-5 (c). This court has recognized that this code section is applicable to both criminal and civil cases. See *Senk* v. *Senk*, 115 Conn. App. 510, 518, 973 A.2d 131 (2009).

To determine the admissibility of prior misconduct evidence, we use a two part test. "Under the first prong of the test, the evidence must be relevant for a purpose other than showing the defendant's bad character or criminal tendencies." (Footnote omitted.) *State* v. *Martin V.*, 102 Conn. App. 381, 386, 926 A.2d 49, cert. denied, 284 Conn. 911, 931 A.2d 933 (2007). Recognized purposes include those enumerated in § 4-5 (c) but are not limited to such. See id. Second, "[f]or prior misconduct evidence to be admissible, it must not only be relevant and material, but also more probative than prejudicial." *State* v. *Campbell*, 328 Conn. 444, 522, 180 A.3d 882 (2018). "Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the [fact finder]. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Solomon*, 150 Conn. App. 458, 463, 91 A.3d 523, cert denied, 314 Conn. 908, 100 A.3d 401 (2014).

In *Campbell*, our Supreme Court held that the listed exceptions in section 4-5 (b)[5] of the Connecticut Code of Evidence are intended to be illustrative rather than exhaustive. *State* v. *Campbell*, supra, 328 Conn. 519. "A court is not precluded 'from recognizing other appropriate purposes for which other crimes, wrongs or acts evidence may be admitted, provided the evidence is not introduced to prove a person's bad character or criminal tendencies . . . .' " Id., quoting Conn. Code Evid. § 4-5 (b), commentary;[6] see *State* v. *Campbell*, supra, 519 (holding that establishing means for committing crime

is appropriate alternative purpose for which prior misconduct evidence may be admissible); see also *State* v. *Cooper*, 227 Conn. 417, 424–25, 630 A.2d 1043 (1993) (holding that prior misconduct is admissible to complete story of crime on trial by placing it in context of nearby and nearly contemporaneous events).

The prior misconduct was relevant to the issue of whether the accident caused emotional distress, for which the plaintiff claimed damages. The trial court properly admitted the misconduct evidence for the limited purpose of providing reasons for and the context of the plaintiff's treatment for anxiety and depression in 2014 and 2015. During his therapy sessions, the plaintiff discussed various stressors in his life, including court involvement, financial difficulties, his son's needs, and his divorce.[7] The plaintiff did not mention the 2012 accident until his session on February 18, 2014. At his session following the June 6, 2014 citation, the plaintiff described how the incident affected him.[8] He further elaborated on the incident's impact, particularly as it related to his probation status, in the sessions that followed.[9] The references to the misconduct are relevant because they tended to show that the plaintiff's treatment at CHR did not result from the accident, but rather from other events, including the prior misconduct. Although issues of causation and damages in civil cases are not among the exceptions expressly listed in § 4-5 (c), we hold that the misconduct evidence in this case was material to the plaintiff's claim for emotional damages and was admitted for an appropriate purpose.[10]

We next consider whether the trial court properly determined that the probative value of the evidence outweighed its prejudicial effects. The plaintiff claims that the introduction of the evidence inappropriately biased the jury and caused it to reduce the damages award by 50 percent due to comparative negligence. The defendant argues that the plaintiff put his emotional injuries and treatment records at issue by seeking monetary compensation for his treatment at CHR. We agree with the defendant.

Our Supreme Court has noted that "[t]he party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. . . . The purpose of allowing the introduction of such evidence is not to give the opposing party a license to introduce unreliable or irrelevant evidence but to allow the opposing party to put the initial offer of evidence into its proper context." (Citation omitted; internal quotation marks omitted.) *Somers* v. *LeVasseur*, 230 Conn. 560, 565, 645 A.2d 993 (1994). Here, the evidence that the plaintiff sought to preclude provided necessary context for his claim that he required treatment for anxiety and depression in 2014 and 2015 as a result of the 2012 accident by highlighting the extent to which there were other stressors in his life that likely contributed to his

need for treatment at CHR. As reported in the treatment records, the plaintiff's general discussion of his court involvement as an ongoing stressor was not specific; it was unclear what court proceedings he was referring to. The evidence elicited in cross-examination regarding the plaintiff's prior misconduct was highly probative because it developed the specific nature of the court involvement to which the plaintiff was referring. Because the plaintiff introduced the contents of the treatment records and claimed that his mental health treatment was a result of the accident, he "opened the door" to admitting the evidence. He was not unfairly prejudiced by the contents of the medical records that were related to his treatment at CHR.

In support of his claim that the evidence was more prejudicial than probative, the plaintiff contends that the defendant had other evidence available to dispute that the treatment resulted from the accident. Specifically, he claims that the therapy records as a whole sufficiently demonstrated that he "discussed stressors in his life beyond his injuries from the accident, including his background, family and financial issues, without exposing the highly prejudicial facts concerning his convictions for harassment of his ex-wife, [operating a motor vehicle while under the influence], [v]iolation of [p]robation, and a thirty-day incarceration, as well as arrests that did not even lead to a conviction." He further argued that the prejudicial effect of a criminal record far outweighed any disadvantage that the defendant may have endured "if the jury was not made aware that [the plaintiff] had been ordered to attend therapy in connection with court proceedings and that during part of those therapy sessions he discussed stressors he was experiencing from those criminal charges." We disagree. Although the plaintiff did testify about other noncriminal stressors in his life, it would have been reasonable for the jury to find that the arrests and convictions were significantly disruptive in his life and thus were responsible, at least in part, for his treatment at CHR.

Ultimately, the jury found partly in favor of the plaintiff on liability and awarded monetary damages to compensate him for the injuries he suffered. The plaintiff's claim that he was compensated unfairly because of the introduction of evidence of misconduct is misplaced. The jury reduced its award because it found the plaintiff's negligence was a cause of his damages. "Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fairminded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court be that a different result should have been reached." (Internal quotation marks omitted.) *Trzcinski* v. *Richey*, 190 Conn. 285, 298–99, 460 A.2d 1269 (1983). The issue of liability was contested;

there was conflicting evidence, and the jury reasonably could have concluded on the evidence that the plaintiff's negligence was partly responsible for the damages.[11] We conclude that the court did not abuse its discretion in concluding that the introduction of the plaintiff's prior arrests and convictions was not so unduly prejudicial as to outweigh their probative value or in sustaining the defendant's objection to the plaintiff's motion in limine with respect to the plaintiff's prior convictions and other misconduct.[12]

II

The plaintiff also claims that the court erred in failing to preclude evidence of a motor vehicle citation dated June 6, 2014, which resulted in a violation of the plaintiff's probation stemming from a 2013 conviction for operating a motor vehicle while under the influence. Alternatively, the plaintiff argues that even if evidence of the June 6, 2014 citation were properly admissible, the defendant's inquiry into the matter exceeded the scope prescribed by the trial court. For the purpose of our analysis of admissibility, we see no material differences between evidence of the citation and evidence of the prior arrests and convictions discussed in Part I of this opinion. Both categories of evidence were used to show other stressors in the plaintiff's life. The June 6, 2014 citation was relevant to the damages element of the plaintiff's claim, because it tended to make it less probable that the plaintiff's treatment at CHR resulted, in whole or in part, from the 2012 accident. The plaintiff himself testified that the citation was particularly stressful because of its bearing on his probation status and the custody of his child. Accordingly, we conclude that the court did not abuse its discretion in determining that the probative value of the evidence outweighed its prejudicial effects.

The plaintiff argues that the inquiry by the defendant's counsel into specific details associated with the June 6, 2014 accident exceeded the scope prescribed by the trial court. We disagree. The plaintiff's counsel failed to make any objections during the line of questioning. "Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel. . . . By failing to object . . . the defendant failed to preserve this claim." (Internal quotation marks omitted.) *State* v. *Patterson*, 170 Conn. App. 768, 786, 156 A.3d 66, cert. denied, 325 Conn. 910, 158 A.3d 320 (2017). The issue was raised for the first time in the plaintiff's appellate brief, and we are not bound to consider it. Practice Book § 50-5; *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619, 99 A.3d 1079 (2014). The plaintiff's counsel additionally did not request curative instructions. The plaintiff contended that "no curative instruction would have prevented the jury from having yet another reason to possess a negative bias towards the Plaintiff." Yet, in supporting his

argument that the trial court's error was harmful, the plaintiff highlighted the fact that "the court took no corrective measures, such as curative instructions, to mitigate the effect of the evidentiary impropriety." The plaintiff cannot simultaneously argue that the curative instructions would have been ineffective, yet contend that the trial court's failure to provide such instructions contributed to harmful error. We are unconvinced by the plaintiff's inconsistent argument. See *Modaffari* v. *Greenwich Hospital*, 157 Conn. App. 777, 787–88, 117 A.3d 508 (holding that plaintiff's repeated requests for additional curative instructions and later contention that she would have suffered further prejudice had court given jury additional curative instructions was inconsistent), cert. denied, 319 Conn. 904, 122 A.3d 1279 (2015). We hold that the trial court did not abuse its discretion by admitting evidence of the June 6, 2014 citation.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The medical record included the following: "[The plaintiff] came in today per the orders of the court. He . . . currently reports that he is only here to do what he needs to for the courts. . . . He does report that he has been 'on edge and stressed' with all of the court proceedings but other than that he reported no mental illness."

[2] The following colloquy occurred between the defendant's counsel and the plaintiff:

"Q. Did you say—which is what the record says, which is in evidence, David [the plaintiff] reported that 2013 was a hard year for him as he was going through ugly divorce, dealing with family court, juvenile court, and criminal court.

"A. Okay. That's accurate.

"Q. You were referred to CHR for services in 2015 by your probation officer. Correct?

"A. Yes, that was—yes.

"Q. You had been on probation for charges which included harassment. That was the dispute with Audra.

"A. Yes.

"Q. Which was first pressed in 2012, and a DUI [operating a motor vehicle while under the influence], which occurred in September, 2013. Correct?

"A. I—yes, I was charged with a DUI.

"Q. Okay. That was September 8, 2013?

"A. Sounds correct.

"Q. And as a result of both of those charges, that is the DUI and the harassment charge, you pled guilty to a sentence which resulted in you being placed on probation.

"A. Yes, I pled guilty because given my circumstances and dispute over custody, I was kind of forced to make a pleading in that manner.

"Q. Was that a stressful event in your life?

"A. It was.

* * *

"Q: Okay. And in fact, the reason that you went to Community Health Resources in 2014 was because it was ordered as part of a custody evaluation. Correct?

"A. That's correct.

"Q. And in fact, separately, the court encouraged you to attend therapy for relapse present—prevention due to the DUI.

"A. It's possible, yes.

"Q. Okay. So you, you didn't go to therapy with Community Health Resources because of problems you were having from this 2012 motorcycle accident. You were ordered there by the court.

"A. I did not seek the treatment for that, no."

[3] The following colloquy occurred between the defendant's counsel and the plaintiff:

"Q. Stay with me. June, 2014, early morning, the police arrest you and charge you with being responsible for a car leaving the road and hitting the tree and charge you with driving an unregistered motor vehicle. Correct?

"A. They gave me a ticket, but yes.

"Q. Okay. And this was very stressful to you. Wasn't it?

"A. It was stressful considering—

"Q. Yeah.

"A. —it had nothing to do with me.

"Q. Well—

"A. Well, not nothing, but I wasn't driving the vehicle.

"Q. Not only that, but you were on probation at the time.

"A. Yes.

"Q. And you knew that you potentially faced some jeopardy of going to jail—

"A. That would be correct.

"Q. —for violating the terms of your probation. Correct?

"A. Yes.

"Q. In fact, you told your health care provider at the Community Health Resources, your therapist, that you were concerned with this latest charge, that you'd have to go to jail and lose custody of your son and you had been told in fact a warrant was going to be issued for your arrest on those charges.

"A. Yes."

[4] The defendant's counsel, in closing argument, stated: "What he's not entitled to do is blame personal turmoil, which happened after 2012, on [the defendant]. What you have here is a claim that court-ordered psychotherapy to the tune of $4000 in 2014. The record, which is in evidence, Exhibit 17, indicates right there, it's in evidence, ladies and gentlemen, that [the plaintiff] was there ordered by the court. He had a DUI. He was charged with a restraining order violation, and he was in the midst of a custody dispute. And the court said we want you to get therapy. That's all well and good and I wouldn't be talking to you about it, except he's monetizing this event and claiming it's all due to this intersection collision in 201[2]. That's why we're talking about it. You can read the records, because they're in evidence. David reported that 2012 was a hard year for him as he was going through ugly divorce, dealing with family court, juvenile court, and criminal court. I bet. I bet it was. But it's not the fault of this intersection collision, and that's what I mean by a tell."

[5] The Connecticut Code of Evidence was amended in 2011, and subsection (b) of § 4-5 was redesignated as subsection (c).

[6] See footnote 5 of this opinion.

[7] The records provide: "[The plaintiff] reported that 2013 was a hard year for him as he was going through [an] ugly divorce, dealing with family court, [j]uvenile court and criminal court."

[8] The records provide: "[The plaintiff] reported not doing well due to a motor vehicle incident that occurred on 6/6/14 which he is being charged with driving an unregistered car. . . . [The plaintiff] claims he is afraid to lose custody of son if he goes to jail."

[9] For example, "[the plaintiff] reported has not been doing well due to violating probation and possibly having to get a lawyer. [The plaintiff] claims there is a chance he can go to jail but he is hopeful he doesn't. . . . [The plaintiff] reported he is feeling very sad about situation and is fearful that son will be taken away."

[10] We note that on its face, § 4-5 (a) prohibits the introduction of misconduct evidence "to prove . . . bad character, propensity, or criminal tendencies . . . ." Conn. Code Evid. § 4-5 (a). The evidence in this case was not admitted for any of the proscribed purposes.

[11] Particularly contested was the speed at which the plaintiff was traveling just before the accident occurred. The defendant contended that the plaintiff was speeding above the forty miles per hour speed limit, which had contributed to the accident. The following colloquy occurred between the defendant's counsel and his reconstruction expert:

"Q: So if you had a motorcycle traveling at the speed of forty miles an hour that was confronted by a vehicle pulling out of the Pease Farm Road intersection just as it crested that hill, fair to say with all reasonable accident reconstruction certainty, the bike should've been able to stop.

"A: Correct.

"Q: No collision?

"A: No collision.

"Q: All right. Same, same situation. Assume hypothetically, the bike crests the hill at a speed of fifty-five miles per hour, how much distance will the

bike need to cover to come to a stop?

"A: 252 feet .03.

"Q: So if the bike is traveling at fifty-five miles per hour, is there going to be a collision?

"A: Yes."

[12] In light of our conclusion that the evidence was properly admitted, we need not consider the defendant's argument that the rulings were harmless.

————————————————————