WILLIAM R. SENK *v.* DONNA LEE SENK
(AC 29863)

Flynn, C. J., and Lavine and Beach, Js.

Argued April 14—officially released July 7, 2009

*Thomas C. Simones*, for the appellant (defendant).

*Michael J. Devlin*, for the appellee (plaintiff).

FLYNN, C. J. The defendant, Donna Lee Senk, appeals from the judgment of the trial court, rendered following a limited contested trial, dissolving her marriage to the plaintiff, William R. Senk. On appeal, the defendant claims that the court improperly (1) failed to recuse itself from the case after hearing another matter involving the defendant, (2) failed to take into account the evidence in the record as a whole and (3) allowed the submission of evidence that was irrelevant and prejudicial to the defendant. We affirm the judgment of the trial court.

The court found the following facts. The plaintiff and the defendant were married on February 7, 2003. The defendant had been married five or six times, and it was unclear whether she was lawfully divorced or widowed at the times she entered into some of the marriages. While she was married to the plaintiff, she married Mark Randall Johnson in Vermont on August 3, 2006. At the time of the parties' marriage, the plaintiff had owned the marital residence since August, 1992. The defendant moved into the residence with her three children from a previous marriage. Sometime thereafter, Timothy Maheu, the defendant's former or present husband at the time, moved in as well. After Maheu moved into the residence, the defendant moved the plaintiff from the master bedroom on the first floor to the basement.

On or about August 1, 2002, the defendant caused the plaintiff to quitclaim to her a 50 percent interest in the marital residence. The plaintiff refinanced the mortgage on the residence, taking a second mortgage loan from People's Bank in the amount of $80,000, which he used to pay off the existing $38,000 mortgage on the property. The defendant took the remaining $42,000 to pay her accumulated credit card debt and

bills and to purchase multiple vehicles. On March 17, 2003, the plaintiff quitclaimed the remaining 50 percent interest in the residence to the defendant. In May, 2004, People's Bank commenced a foreclosure action on the residence. To avoid foreclosure, the defendant refinanced the People's Bank mortgage in November, 2005, by securing from another lender an additional interest only mortgage in the amount of $70,000. The loan has a balloon payment of $70,000 due in 2010. The state placed a lien on the residence due to assistance received by the defendant or her children.

Throughout the parties' marriage, the defendant was abusive, controlling, intimidating and threatening toward the plaintiff. The plaintiff is an alcoholic, and the defendant encouraged or enabled his alcoholism and, further, supplied him with unprescribed prescription medication that caused him to become confused and feeble, quite contrary to his state prior to the parties' marriage. The defendant further exercised control over the plaintiff's home, credit cards and finances. In 2003 or 2004, the plaintiff vacated the marital residence following the defendant's unfounded accusations that he had molested her children.

The plaintiff filed a complaint in November, 2006, seeking dissolution of the marriage. The court, *Shluger*, *J.*, heard testimony on February 21 and 22 and April 1, 2008. On April 2, 2008, the court issued a memorandum of decision in which it stated that it found the plaintiff's testimony to be credible and the defendant's to be not credible. The court dissolved the parties' marriage and ordered the defendant to quitclaim the marital residence to the plaintiff. The court further ordered the defendant to pay the lien held by the state and the plaintiff to assume the remaining mortgage on the property. This appeal followed. Additional facts will be supplied where necessary.

## I

The defendant first claims that the trial judge, *Shluger, J.*, improperly failed to recuse himself from the case. Specifically, she argues that the trial judge had acquired personal knowledge of the defendant and her situation when he presided over an unrelated restraining order hearing concerning the defendant and her children, held during the course of the parties' divorce trial. She contends that an appearance of impropriety resulted from the judge's decision to continue presiding over the divorce action and that pursuant to canon 3 (c) (1) (A) of the Code of Judicial Conduct,[1] the judge should have recused himself from the matter. We disagree.

The following additional facts are necessary for our review of the defendant's claim. The court, *Shluger, J.*, heard evidence in the parties' dissolution trial on February 21 and 22, 2008. On March 10, 2008, while the dissolution trial was still ongoing, the court presided over an unrelated hearing in which the department of children and families (department) sought a restraining order against the defendant in regard to two of her children who were in foster care. After hearing testimony from the foster mother of one of the defendant's children and two witnesses called by the defendant, the court granted the department's request for a restraining order. On April 1, 2008, the day that the dissolution trial continued, the defendant filed a motion seeking that Judge Shluger recuse himself from the dissolution trial. Following a brief hearing on the matter, the defendant's

---

[1] Canon 3 (c) (1) of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

"(A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ."

counsel withdrew the motion, stating: "Your Honor, just to be absolutely clear, my client has said on the record that she wants you to finish this trial, and she knows you're a fair and honest man and she—and she's comfortable with it."[2]

The defendant acknowledges that because she withdrew the motion to recuse, her claim is unpreserved, and she, therefore, seeks to prevail pursuant to the plain error doctrine. See Practice Book § 60-5. Ordinarily, we will not review a claim of judicial bias unless that claim was properly presented to the trial court through a motion for disqualification or a motion for a mistrial. *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982). Because of the seriousness of an accusation of judicial bias or prejudice, such claims have been reviewed under the plain error doctrine. Id. The plain error doctrine is not a rule of reviewability; it is a rule of reversibility pertaining to unpreserved trial court rulings for reasons of policy. *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009). Its use is limited to truly extraordinary situations where the existence of obvious error affects the fairness and integrity of and public confidence in the judicial proceedings. Id. To prevail under the plain error doctrine, the appellant must show that the judgment appealed will result in manifest injustice. Id.

---

[2] Under our rules of practice, a motion to disqualify a judicial authority must be in writing and accompanied by an affidavit stating the factual basis for the motion and certifying that the motion is made in good faith. Practice Book § 1-23. Further, such a motion must be filed no less than ten days prior to the time the case is next called for trial or hearing, unless good cause is shown for failure to file within this time. Id. The record reflects that the defendant's motion was not accompanied by the required affidavit. It was also filed on the same day that the court resumed the dissolution trial, although the hearing concerning the restraining order occurred three weeks earlier. The defendant did not provide a satisfactory reason for its lateness. This practice is to be discouraged. The rules of practice exist for a reason and should be followed, particularly in the case of such a serious matter as a claim of judicial bias.

After review of the transcripts of the relevant proceedings, we conclude that the defendant's claim does not present the type of extraordinary situation that warrants application of the plain error doctrine. The defendant cites no authority for the proposition that a trial judge who presides over a matter concerning a party thereafter should be recused from hearing another matter concerning that party; indeed, there is authority to the contrary. See *Liteky* v. *United States*, 510 U.S. 540, 551, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994) (judge having presided over earlier proceeding concerning party not necessarily biased or prejudiced thereafter against that party); *In re Heather L.*, 274 Conn. 174, 178, 874 A.2d 796 (2005) (same). There is nothing extraordinary about a judge who has presided previously over a proceeding concerning a party hearing another case involving that same party. The defendant here withdrew her motion seeking recusal. The judge was not required to recuse himself simply because he had heard another matter concerning the defendant. Further, we find nothing in the record that would undermine public confidence in the court's impartiality during the remaining course of the dissolution proceedings. The defendant, therefore, cannot prevail on this claim under the plain error doctrine.

## II

The defendant next claims that the court failed to take into account the evidence as a whole. She specifically argues that the court improperly ordered her to quitclaim her interest in the marital residence to the plaintiff because the evidence showed that the plaintiff "gave the marital home to the [defendant] of his own accord." We disagree.

Our standard of review for this claim is as follows. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set

out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment." (Internal quotation marks omitted.) *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 237, 963 A.2d 943 (2009).

Our thorough review of the record reveals that the court properly considered all the evidence before it in coming to its decision ordering the defendant to quitclaim the marital residence to the plaintiff. The record is replete with evidence of the defendant's abusive and controlling nature toward the plaintiff from the very outset of the marriage. The court reasonably concluded that the defendant caused the plaintiff to become confused and feeble by plying him with alcohol and prescription drugs not prescribed to him. Also reasonable in light of the evidence was the court's conclusion that the defendant exerted control over the plaintiff's property, credit cards and finances. Given this evidentiary background, the court's decision to grant the marital home to the plaintiff was reasonable, grounded in its findings, and well within the court's statutory authority. See General Statutes § 46b-81 (a).[3] The defendant has failed in her burden to show that any of the court's findings were clearly erroneous, and the facts found strongly support the court's judgment.

## III

The defendant's final claim is that the court improperly admitted evidence of the defendant's prior misconduct that was irrelevant and unduly prejudicial to her.

---

[3] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband

Although we agree that such evidence was not admitted properly under the common scheme or plan exception, we conclude that the defendant has failed to demonstrate that these evidentiary rulings were harmful, that is, that they were likely to affect the result in the case.

The court received testimony and other evidence that the defendant, on previous occasions, falsely had accused various men, including two former husbands and her stepfather, of sexually abusing her children. The court also admitted evidence that the defendant had committed financial fraud, including a Probate Court order terminating her guardianship over an estate due to her fraudulent and improper withdrawals from a bank account connected to the estate. The defendant objected to admission of the evidence on the ground that it was irrelevant to the dissolution proceedings and unduly prejudicial to her. The plaintiff stated that he offered the evidence to prove that the defendant's prior misconduct and various actions during her marriage to the plaintiff constituted a common plan or scheme to obtain the plaintiff's assets fraudulently.

Our standard of review of a claim that a court improperly admitted evidence is well established. We afford great deference to the ruling of a trial court concerning the admissibility of evidence. *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 406, 880 A.2d 151 (2005). Accordingly, such evidentiary rulings will be overturned only upon a showing of a court's manifest abuse of its discretion. Id.

Evidence concerning a person's prior misconduct is inadmissible to prove that person's bad character or criminal tendencies. Conn. Code Evid. § 4-5 (a). This prohibition pertains to both criminal and civil cases. See *Russell* v. *Dean Witter Reynolds, Inc.*, 200 Conn.

or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

172, 191–92, 510 A.2d 972 (1986); 1 C. McCormick, Evidence (6th Ed. 2006) § 189, pp. 748–49. Such evidence of prior wrongdoing is admissible, however, to prove "intent, identity, malice, motive, *common plan or scheme*, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." (Emphasis added.) Conn. Code Evid. § 4-5 (b); see *Russell* v. *Dean Witter Reynolds, Inc.*, supra, 193 (evidence of defendant's prior misconduct admissible to prove defendant's motive and fraudulent intent).

Our Supreme Court has described the common plan or scheme exception, as follows. "Evidence of uncharged misconduct, although inadmissible to prove a defendant's bad character or propensity to engage in criminal behavior, is admissible '[t]o prove the existence of a larger plan, scheme, or conspiracy, of which the crime on trial is a part.' 1 C. McCormick, [supra] § 190, pp. 754–55. To prove the existence of a common scheme or plan, each crime must be 'an integral part of an overarching plan explicitly conceived and executed by the defendant or his confederates.' Id., p. 755; see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.19.9, p. 237 ('The exception for common plan or scheme admits evidence of conduct that forms part of an overall plan. This exception requires that the misconduct be connected to a "common" plan or scheme and not be isolated or unconnected conduct of a similar nature.')." *State* v. *Randolph*, 284 Conn. 328, 342, 933 A.2d 1158 (2007).

Applying this law to the facts of the present case leads to the conclusion that the challenged evidence of the defendant's prior misconduct did not qualify for admission under the common plan or scheme exception. The evidence showed that the defendant had made numerous false allegations of sexual abuse prior to her marriage to the plaintiff. However, the evidence did not

demonstrate that these acts were part of an overarching plan *which included* the defendant's similar accusations against the plaintiff. Instead, the evidence demonstrated, at most, that the defendant had acted badly in this manner in the past with respect to other persons. The evidence concerning the defendant's prior financial fraud similarly was not admissible under the common plan or scheme exception, as it was unconnected to any overall plan to defraud the plaintiff in this case.

This determination that the challenged evidence was not admissible under the common scheme or plan exception does not complete our analysis. A party claiming error in an evidentiary ruling of the court must carry the burden of demonstrating that the error was harmful before a new trial may be granted. *Desrosiers* v. *Henne*, 283 Conn. 361, 366, 926 A.2d 1024 (2007). In a civil case, the standard for determining whether such an improper ruling is harmful is whether the ruling would likely affect the result. *Hicks* v. *State*, 287 Conn. 421, 439, 948 A.2d 982 (2008).

The defendant has not met her burden of demonstrating that the evidentiary error likely affected the result in this case. As has been previously detailed, the court found that the defendant abused, controlled, intimidated and threatened the plaintiff throughout their brief marriage. The court found that the defendant caused the plaintiff to become confused and feeble by encouraging his drinking and providing him with prescription drugs. The court further found that the defendant exercised control over the plaintiff's finances, including the proceeds from the second mortgage loan on the marital residence and the plaintiff's credit cards. All of these findings of the court were supported strongly by the evidence admitted without objection during the trial. The court's judgment granting the marital residence to the plaintiff was similarly supported by its findings. It cannot be said, therefore, that had the evidence of the

defendant's prior misconduct been excluded the result of the case would have been different.

The judgment is affirmed.

In this opinion the other judges concurred.