******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JAROMIR KOSAR *v.* MARIE GIANGRANDE
## (AC 46271)

Cradle, Clark and Seeley, Js.

*Syllabus*

The defendant appealed from, inter alia, the judgment of the trial court dissolving her marriage to the plaintiff and its grant of the plaintiff's amended motion for contempt. She claimed, inter alia, that the court abused its discretion when it limited her presentation of her case-in-chief to only fifteen minutes during the hearing on the contempt motion. *Held*:

The trial court abused its discretion and violated the defendant's right to due process by affording her only fifteen minutes to present her case-in-chief at the hearing on the plaintiff's amended motion for contempt and motion for an injunction, the court having made no effort to divide the time equitably between the parties or to otherwise ensure that the defendant had sufficient time to put on her case; accordingly, this court reversed the judgment of the trial court with respect to the award of attorney's fees and ordered a new hearing for the limited purpose of determining whether the plaintiff was entitled to an award of attorney's fees.

The trial court did not abuse its discretion in declining to hear the defendant's motion to open the parties' pendente lite agreement regarding the marital home during the hearing on the plaintiff's amended motion for contempt and motion for an injunction.

The defendant could not prevail on her claim that the trial judge committed plain error by failing to recuse himself sua sponte from presiding over the parties' dissolution trial after previously holding a hearing pursuant to *Matza* v. *Matza* (226 Conn. 166) regarding her then counsel's motion to withdraw, as the defendant failed to demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal, and, even if this court assumed that it was error for the trial judge not to recuse himself, this court would be unable to conclude that the error was so obvious as to be not debatable.

The defendant's claim that the trial court improperly applied the missing witness rule was without merit, the defendant having mischaracterized the court's decision, as the court did not draw an adverse inference as that term is understood in the context of the missing witness rule but, rather, the decision made clear that the defendant's self-serving testimony, without the benefit of corroborating evidence, was not credible.

The defendant could not prevail on her claim that the trial court improperly relied on a prior trial court's credibility finding in adjudicating the parties'

dissolution, as the court's memorandum of decision made clear that it based its credibility determinations on its own observations.

Argued May 20—officially released October 22, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Michael E. Shay*, judge trial referee, granted the plaintiff's amended motion for contempt and motion for an emergency ex parte injunction and issued various orders; thereafter, the court, *Moukawsher, J.*, granted the motion to withdraw filed by the defendant's counsel; subsequently, the case was tried to the court, *Moukawsher, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*Kenneth J. Bartschi*, with whom was *Karen L. Dowd*, for the appellant (defendant).

*Alexander Copp*, for the appellee (plaintiff).

*Opinion*

CLARK, J. In this dissolution action, the defendant, Marie Giangrande, appeals following the trial court's judgment dissolving her marriage to the plaintiff, Jaromir Kosar, and the trial court's order on the plaintiff's amended motion for contempt and injunctive relief. On appeal, the defendant claims that the court, *Hon. Michael E. Shay*, judge trial referee, (1) abused its discretion and deprived her of due process of law by limiting her case-in-chief on the plaintiff's pendente lite amended motion for contempt and motion for injunctive relief to only fifteen minutes and (2) abused its discretion in refusing to hear her motion to open the parties' pendente lite agreement regarding the marital home. She also claims that the court, *Moukawsher, J.*,

(3) committed plain error by presiding over the parties' dissolution trial after conducting a hearing on the motion of the defendant's then counsel to withdraw his appearance and (4) made credibility determinations on improper bases.[1] We agree with the defendant on her first claim but disagree with her on her other claims. Accordingly, we reverse in part and affirm in part the judgment of the trial court.

We begin with the relevant facts and procedural history. The plaintiff commenced this dissolution action against the defendant by complaint dated April 5, 2019. In February, 2020, the parties entered into a pendente lite agreement regarding, inter alia, the sale of the marital home. The agreement provided that the parties would list the marital home for sale with a mutually agreed upon broker. The parties agreed that they would defer to the broker for reasonable and necessary repairs and improvements prior to listing the home and that the defendant would pay for those repairs and improvements with the understanding that those costs would be considered when the court fashioned its financial orders at the time of dissolution. Prior to hiring anyone to work on the home, the parties agreed that they would agree in writing on the provider and the cost. The parties also agreed to defer to the broker on the listing price of the home unless the parties otherwise agreed to a different price. The defendant further agreed to pay various expenses, including (1) $2060 per month to the plaintiff, (2) certain car insurance payments, (3) the first $400 of the marital home's monthly oil bill, (4) one-half of the cost of opening and closing the marital home's pool, and (5) a one time payment of $7000 to assist the plaintiff in purchasing a vehicle. On February

---

[1] Although the defendant additionally claims that the court's award of attorney's fees should be reversed because it was based on the flawed conclusion as to the motion for contempt, that issue is subsumed in the defendant's other claims, which we address herein.

10, 2020, the court, *McLaughlin, J.*, approved the pendente lite agreement finding that it was fair and equitable under the law.

Following the approval of the pendente lite agreement, the parties filed a host of motions with the court. Relevant for purposes of this appeal, the plaintiff filed a motion for contempt on September 25, 2020,[2] arguing that the defendant violated the pendente lite order by paying the plaintiff less than $2060 per month, failing and refusing to pay her share of the pool costs, and failing and refusing to pay for reasonable and necessary repairs and improvements needed prior to listing the marital home for sale. The plaintiff filed an amended motion for contempt on November 10, 2020, making additional allegations, including, inter alia, that he had taken care of as many of the repairs and improvements that he reasonably could with the hope that the court would order reimbursement to be made by the defendant. He also claimed that, although he had made those repairs and improvements, the defendant still refused to sign an agreement to list the property for sale despite using a broker whom she herself had selected.

On April 20, 2021, the plaintiff filed a motion for an ex parte emergency injunction, seeking to enjoin the defendant from further violating the parties' pendente lite order as it related to the sale of the marital home. Specifically, the plaintiff sought an order requiring the defendant to sign, within twenty-four hours, a listing agreement for the sale of the property at the listing price recommended by the broker. In the event the defendant failed to sign the agreement within that time frame, the plaintiff requested the court to "order the property to be judicially transferred to the plaintiff,

---

[2] The parties filed numerous motions for contempt over the course of the litigation. The earliest such motion pertaining to the pendente lite order was filed by the plaintiff on March 13, 2020; he alleged that the defendant had violated the order by failing to pay her share of the marital home's oil bill.

granting the plaintiff final decision-making authority as to all decisions related to the sale of the property so that he [could] effectuate the order to list and sell the property, all net proceeds of which [would] be held in escrow pending agreement of the parties or further order of the court . . . ." The court did not grant ex parte relief but scheduled the matter for a hearing.

On July 2, 2021, the defendant filed a motion to open and set aside the court's February 10, 2020 order accepting and approving the parties' pendente lite agreement. In her motion, the defendant claimed that the plaintiff's financial affidavit, dated February 10, 2020, fraudulently misrepresented the plaintiff's income and assets.

On July 7, 2021, the court held a virtual hearing to address the various motions that were pending. At the outset of the hearing, the court observed that there were thirteen motions on its docket for that day, which it described as "a couple of discovery motions regarding the Bitcoin," "a motion to modify which is a little bit different," and "a whole mess of contempts . . . that seem to [involve] an agreement that the parties reached in . . . 2020." The court also observed that there was a pending motion to open and to set aside the parties' pendente lite agreement but that the motion was not scheduled to be heard that day. Although the defendant's counsel argued that the defendant's motion to open and set aside should be addressed during that hearing in light of the fact that many of the pending motions pertained to the pendente lite order that the defendant sought to set aside, the court nevertheless ruled that the motion to open would be "for another day." After some further discussion about which motions would be heard that day, the court indicated that it would focus on the plaintiff's amended motion for contempt and motion for an injunction and proceeded with the hearing on those motions.

On August 17, 2021, the court issued a memorandum of decision on the plaintiff's amended motion for contempt and motion for an injunction. The court concluded that the defendant had violated the pendente lite order by, among other things, refusing to agree to and pay for any reasonable and necessary repairs and improvements to the marital home as recommended by the broker, obstructing and impeding the listing of the property, and failing to make the full monthly payment of $2060. It characterized the defendant's conduct as "well outside of the realm of good faith and fair dealing." Although the court denied the plaintiff's motion for contempt, it nevertheless ordered the defendant to pay the plaintiff his reasonable attorney's fees and the costs that he incurred.[3] The court also granted in part the plaintiff's motion for injunctive relief, giving the plaintiff (1) exclusive possession of the marital home, (2) sole authority to sign any and all documents necessary to list the marital property for sale, and (3) sole authority to engage any person or entity and to contract for all reasonable and necessary repairs and improvements as recommended by the broker. The court also ordered that the cumulative total of any and all sums owed by the defendant due to her failure to abide by the terms of the pendente lite order, including all reasonable and necessary costs for repairs and improvements, would become a charge against her share of the net proceeds from the sale of the marital home.

On November 4, 2021, following the denial of her motion for reargument, the defendant appealed to this court challenging the court's August 17, 2021 decision. On November 26, 2021, the defendant amended her appeal to also challenge the court's November 17, 2021 attorney's fees award. The plaintiff moved to dismiss

---

[3] On November 17, 2021, after a hearing on attorney's fees, the court ordered the defendant to the pay the plaintiff $18,792.50 for attorney's fees incurred.

the appeal and the amended appeal on the ground that they were not taken from a final judgment. This court dismissed the portion of the appeal "challenging the pendente lite order of exclusive possession and pendente lite order for injunctive relief" but denied the motion to dismiss "as to the portion of the appeal challenging the pendente lite award of attorney's fees." Although this court denied the motion to dismiss as to the portion of the appeal challenging the pendente lite award of attorney's fees, the defendant nevertheless withdrew her appeal on August 10, 2022.

On June 30, 2022, Attorney Ross Kaufman, the defendant's then counsel, moved to withdraw his firm's appearance on behalf of the defendant. A virtual hearing on the motion to withdraw was held by the trial court on July 21, 2022, at which time Attorney Kaufman requested a hearing pursuant to *Matza* v. *Matza*, 226 Conn. 166, 627 A.2d 414 (1993), a hearing colloquially referred to as a "*Matza* hearing."[4] The plaintiff and his counsel were ordered to leave the hearing, at which time the court heard from Attorney Kaufman and the defendant. By written order dated July 21, 2022, the court, *Moukawsher, J.*, granted counsel's motion to withdraw.

The trial on the dissolution that had been scheduled for July, 2022, was postponed to a later date so that the defendant could obtain new counsel. The defendant subsequently retained counsel, who filed an appearance on September 23, 2022, and a trial was held on the dissolution on October 24 and December 16, 2022, and January 19, 2023. On February 2, 2023, the court rendered judgment dissolving the parties' marriage and issued various financial orders. This appeal followed.

---

[4] A *Matza* hearing is a hearing on an attorney's request to withdraw his or her representation of a client because of concerns that continued representation of that client would result in a violation of the Rules of Professional Conduct.

## I

The defendant first claims that the court abused its discretion and deprived her of due process of law when it afforded her only fifteen minutes to present her case-in-chief at the July 7, 2021 virtual hearing on the plaintiff's amended motion for contempt and motion for injunction. She claims that, although the court ultimately did not find her in contempt following that hearing, it nevertheless concluded that she violated the pendente lite order and awarded the plaintiff attorney's fees without affording her a full and fair opportunity to present her case. She also claims that the court abused its discretion in refusing to hear her motion to open at that same hearing. We address the defendant's claims in turn.[5]

---

[5] The plaintiff contends that the defendant waived her right to challenge the court's order requiring her to pay the plaintiff's attorney's fees because she previously raised the same issue in an earlier appeal and subsequently withdrew it. We disagree. The plaintiff points to our decision in *Detar* v. *Coast Venture XXVX, Inc.*, 91 Conn. App. 263, 266, 880 A.2d 180 (2005), for the proposition that a failure to raise an issue in an initial appeal to this court constitutes a waiver of the right to bring the claim in a subsequent appeal. The facts of *Detar*, however, are different from the facts of the present case, and we are not persuaded that declining review of the defendant's claim under these circumstances is appropriate. In *Detar*, this court decided the merits of an appeal and remanded the case to the trial court for further proceedings out of which a subsequent appeal later ensued. Id., 265–66. This court explained that a "[f]ailure to raise an issue in an initial appeal to this court constitutes a waiver of the right to bring the claim." Id., 266. Because the defendant in that case failed to challenge the trial court's prejudgment interest award in the first appeal when it had the opportunity to do so, we declined to address the claim in the subsequent appeal that came before the court. Id. In the present case, however, this court never decided the merits of the initial appeal because it dismissed part of the appeal, and the defendant withdrew the remaining part of the appeal pertaining to the court's award of attorney's fees. To the extent the facts of *Detar* are similar in some respects to the facts of the present case, we agree with the defendant that it nevertheless was reasonable under the circumstances of this case for her to withdraw the remaining portion of her earlier appeal as to the attorney's fees because, as the defendant correctly points out, her challenge to the attorney's fees award was tied inextricably to the dismissed portion of the appeal, which challenged the merits of the underlying judgment out of which the attorney's fees award arose.

It is well known that "[m]atters involving judicial economy, docket management [and control of] courtroom proceedings . . . are particularly within the province of a trial court. . . . Connecticut trial judges have inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . . The [trial] court has wide latitude in docket control and is responsible for the efficient and orderly movement of cases. . . . The trial court has inherent authority to control the proceedings before it to ensure that there [is] no prejudice or inordinate delay." (Citations omitted; internal quotation marks omitted.) *Ill* v. *Manzo-Ill*, 210 Conn. App. 364, 374, 270 A.3d 108, cert. denied, 343 Conn. 909, 273 A.3d 696 (2022).

In reviewing the court's exercise of its discretion, however, we are cognizant that "[t]he court's discretion . . . is not unfettered; it is a legal discretion subject to review. . . . [D]iscretion imports something more than leeway in [decision making]. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice . . . ." (Internal quotation marks omitted.) *C. A.* v. *G. L.*, 201 Conn. App. 734, 739, 243 A.3d 807 (2020).

A court's obligation to conform with the spirit of the law necessarily requires conformity with the principles of due process. When one is charged with contempt, for instance, due process requires that the person be "advised of the charges against [her], have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses [o]n

Accordingly, under the facts of this case, we conclude that the defendant did not waive her claim.

[her] behalf, either by way of defense or explanation." (Emphasis omitted; internal quotation marks omitted.) *Ill* v. *Manzo-Ill*, supra, 210 Conn. App. 376.

"A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . . Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. . . . It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution that persons whose . . . rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner. . . . Where a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained." (Internal quotation marks omitted.) *Morera* v. *Thurber*, 187 Conn. App. 795, 799–800, 204 A.3d 1 (2019). As such, a court does "not have the right to terminate [a] hearing before [the parties have] had a fair opportunity to present evidence on the contested issues." *Szot* v. *Szot*, 41 Conn. App. 238, 242, 674 A.2d 1384 (1996). "Whether a party was deprived of [her] due process rights is a question of law to which appellate courts grant plenary review." *McFarline* v. *Mickens*, 177 Conn. App. 83, 100, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018).

With these principles in mind, we turn to the record in this case. At the outset of the court's July 7, 2021 hearing, during which it heard the plaintiff's amended motion for contempt and motion for injunction, the court explained to the parties' counsel that "we've been

assigned one day. You're both very experienced counsel. This will take one day. This is not going over into another day. There was a time when thirteen motions [would] strike terror in my heart, it does not anymore." A few moments later, the court reiterated that "[t]his is [the] time that you guys have been allotted, this is the judge that you have been allotted, and this will finish by no later than 4:45 this afternoon and, maybe, hopefully sooner." The court indicated that it would focus on the plaintiff's amended motion for contempt and motion for injunction.

The plaintiff proceeded to put on his case. The plaintiff's counsel called as witnesses the plaintiff, the defendant, and Timonthy Dent, the parties' real estate agent. At no point during the hearing did the court give the plaintiff's counsel a tentative deadline by which she was required to conclude her presentation of evidence to ensure that the defendant had ample time to present her case. After the plaintiff rested his case late in the afternoon, the court said to the defendant's counsel: "Okay. [Attorney] Kaufman, you have sixteen minutes, so I would, you know, urge you to if you have any witnesses that you want to call, [that] you use your time wisely. You know . . . as I said, this is my function is to manage this case. We have two motions, one of them [is] a contempt motion. Contempt is a relatively, you know, easy motion. You know, we're now five hours down the road so I think that we've aired this out pretty well. . . . [I]f you do have some testimony that you think is relevant to the points that are . . . seminal whatever you want to call it, you know, the gravamen of these two motions, then please call them. You've got fifteen minutes to do it."[6]

---

[6] By that point, the court already had been put on notice that the defendant intended to present a case-in-chief and did not intend to rely solely on her cross-examination of the witnesses. Indeed, earlier in the hearing, the court pressured the parties during the plaintiff's direct examination and the defendant's cross-examination of the defendant to finish up with that witness. It stated: "I think we need to button this witness down here. . . . [W]e need

The defendant's counsel then proceeded to recall the defendant. After some questioning, the court interrupted counsel, stating: "We've reached the witching hour, folks, it's 4:45." At this point, the court had already reminded the parties multiple times that it would be concluding the proceedings at 4:45 p.m. The court extended the hearing five minutes to allow both attorneys to tell the court "what you think [it] need[s] to do and what . . . the evidence show[s]." When the defendant's counsel was afforded the opportunity to speak, he stated: "I just want to state for the record I did not have a chance to complete my case-in-chief." The defendant's counsel then proceeded to make his closing argument, stating at one point during the argument that "[y]ou heard counsel just say there was no evidence about that. You know what? She's right. There was no evidence because we didn't get to it. And I'm certain that, had we gotten to it, there would have been evidence to that point. But we didn't get to it." The court responded: "[W]ould have, should have, could have. You know, everybody knew at ten o'clock this morning what the ground rules were. So, you know . . . I make no apologies."

## A

The defendant claims that the court abused its discretion and violated her due process rights by affording

---

to finish with this witness." Although the defendant's counsel had more questions for his client on cross-examination, he assuaged the court, stating: "Your Honor, I can pass the witness, I can take up the rest of my inquiry on the defendant's case-in-chief." The court responded: "Okay." Later in the hearing, the court inquired on whether the defendant's counsel intended to rely on his cross-examination or planned on presenting a case-in-chief. The court stated: "[C]ertainly, if there's some, you know, burning issue that, you know, that you feel that you need to get to that you didn't cover on your cross-examination I certainly want to give you the opportunity to do that." Defense counsel reiterated to the court: "I have a case-in-chief that I'd like to put on, I intend to recall my client . . . . [Y]ou know, I—I passed over her previously so that we could get to Mr. Dent while he was on the screen and prepared to go."

her only fifteen minutes to present her case-in-chief at the hearing during which the court heard the plaintiff's amended motion for contempt and motion for an injunction. We agree.

There is no question that a court may limit the time allowed for an evidentiary hearing. See, e.g., *Dicker* v. *Dicker*, 189 Conn. App. 247, 265, 207 A.3d 525 (2019). But that limitation must be reasonable in light of the needs of the parties to present their cases. See *Eilers* v. *Eilers*, 89 Conn. App. 210, 218, 873 A.2d 185 (2005). The court's limitations in the present case were not reasonable.

Although the court may have wanted to complete the hearing in one day, due process cannot be administered arbitrarily with a stopwatch. See *Ill* v. *Manzo-Ill*, supra, 210 Conn. App. 383 (concluding that trial court deprived plaintiff of due process of law by affording plaintiff only one day to present defense, when the defendant was given four days to present her case). Throughout the hearing, the court made it clear that it intended to complete the hearing in one day without going beyond 4:45 p.m. Although such a goal, in and of itself, does not necessarily violate due process in any given case, arbitrarily limiting the defendant in the presentation of her case after giving the plaintiff almost the entire allotted time to present his case deprived the defendant of a full and fair opportunity to be heard. See, e.g., *Szot* v. *Szot*, supra, 41 Conn. App. 242 ("[t]he court . . . did not have the right to terminate the hearing before the plaintiff had a fair opportunity to present evidence on the contested issues").

The defendant was afforded only fifteen minutes to present her case-in-chief, and the court made no effort to divide the time equitably between the parties or to otherwise ensure that the defendant had sufficient time to put on her case. Though the defendant was afforded

the opportunity to cross-examine the plaintiff's witnesses, cross-examination is not a substitute for presenting one's own case. See *Zakko* v. *Kasir*, 223 Conn. App. 205, 214, 308 A.3d 92 (2024) ("[i]t is axiomatic that parties have a right to present evidence on contested issues when at a hearing before the court").

The court's management of the July 7, 2021 hearing resulted in the plaintiff receiving several hours to present his case-in-chief while the defendant was afforded just a few minutes. The court's failure to allow the defendant more time to present her case improperly deprived her of a "fair opportunity to present evidence on the contested issues." *Szot* v. *Szot*, supra, 41 Conn. App. 242. Accordingly, the judgment of the trial court must be reversed and the case remanded for further proceedings.

We still must decide, however, the appropriate scope of our remand. Following the hearing at which the defendant's due process rights were violated, the court issued a decision on August 17, 2021. In its decision, the court found that the defendant had violated the pendente lite order by, among other things, refusing to agree to and pay for any reasonable and necessary repairs and improvements to the marital home as recommended by the broker, obstructing and impeding the listing of the property, and failing to make the full monthly payment of $2060. As a result, it issued various orders related to the plaintiff's motion for an injunction, including, inter alia, that the plaintiff would have sole possession of the marital home and sole authority (1) to sign any and all documents necessary to list the marital property for sale and (2) to engage any person or entity and to contract for all reasonable and necessary repairs and improvements as recommended by the broker. It further ordered that the cumulative total of any and all sums owed by the defendant due to her failure

to abide by the terms of the pendente lite order, including all reasonable and necessary costs for repairs and improvements, would become a charge against her share of the net proceeds from the sale of the marital home. Lastly, the court ordered the defendant to pay the plaintiff his reasonable attorney's fees and costs as a result of the court's determination that the defendant violated the pendente lite order.

The defendant, while acknowledging that a final judgment of dissolution generally renders a pendente lite order moot; see *Netter* v. *Netter*, 220 Conn. App. 491, 494–95, 298 A.3d 653 (2023); nevertheless contends that an order reversing the pendente lite orders in this case would afford her practical relief. Specifically, she argues that she is entitled to orders: (1) reversing the award of attorney's fees, (2) requiring the plaintiff to pay her what she characterizes as "restitution" for the $2060 monthly payments and other expenses she paid under the pendente lite order, and (3) requiring the trial court to conduct a new trial on "all financial orders incident to the decree of dissolution." We address each claim in turn.

The defendant first contends that we should reverse the court's award of attorney's fees. The plaintiff counters that the defendant waived her claim challenging the attorney's fees award when she withdrew her first appeal from the pendente lite order. For the reasons set forth in footnote 5 of this opinion, we reject that claim. Moreover, because the court's award of attorney's fees was not extinguished by the final judgment of dissolution and was predicated on the findings that the court made following the hearing that we have concluded violated the defendant's due process rights, we agree with the defendant that her claim is not moot. We therefore remand the case for a new hearing on the plaintiff's amended motion for contempt for the limited

purpose of determining whether the plaintiff was entitled to an award of attorney's fees.

Next, the defendant claims that, on remand, she is entitled to what she describes as "restitution" for the $2060 monthly payments and other expenses she paid under the pendente lite order. We disagree. That claim is based solely on the defendant's claim that the pendente lite order, itself, was procured through fraud. The defendant's claim for restitution thus represents a challenge to the validity of the pendente lite order. It is well established, however, that a motion for contempt "does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed . . . ." (Internal quotation marks omitted.) *Griswold* v. *Stern*, 126 Conn. App. 265, 272, 10 A.3d 1095 (2011). Contempt proceedings are limited to determining (1) whether there was a clear and unambiguous judicial directive and (2) whether the alleged contemnor wilfully violated that directive. See *M. S.* v. *M. S.*, 226 Conn. App. 482, 494 n.9, 319 A.3d 223 (2024).

Permitting the alleged invalidity of the underlying court order to serve as a defense to contempt would run afoul of the rule that "[a] party to a court proceeding must obey the court's orders unless and until they are modified or rescinded, and may not engage in 'self-help' by disobeying a court order to achieve the party's desired end." *Hall* v. *Hall*, 335 Conn. 377, 397, 238 A.3d 687 (2020). Although the defendant also claims that the court abused its discretion when it refused to consider her motion to open the pendente lite order at the July 7, 2021 hearing on the plaintiff's motions seeking to enforce the pendente lite order, we reject that claim in part I B of this opinion.

Lastly, the defendant claims that Judge Shay's error requires a new trial on "all financial orders incident to the decree of dissolution." Specifically, she argues that

Judge Moukawsher improperly relied on Judge Shay's adverse credibility findings in issuing those financial orders. Because we reject that characterization of Judge Moukawsher's decision making in part III B of this opinion, the defendant's claim that she is entitled to a new trial on the financial orders necessarily fails as well.

In sum, because the court failed to provide the defendant with an adequate opportunity to present her case-in-chief, which deprived her of due process of law, the judgment of the trial court with respect to the award of attorney's fees must be reversed. The case is remanded for a new hearing on the plaintiff's amended motion for contempt for the limited purpose of determining whether the plaintiff was entitled to an award of attorney's fees.

B

The defendant next claims that the court abused its discretion by declining to consider the defendant's motion to open and vacate the parties' pendente lite agreement at the July 7, 2021 hearing. She acknowledges that the court reasonably could limit the number of motions to address at that hearing but claims it was error for the court not to consider her motion to open. In her view, had the court considered and granted her motion to open and vacated the pendente lite agreement as she requested, it would have rendered moot the defendant's motion for contempt, which was predicated on the defendant's alleged violation of the pendente lite agreement. We are not persuaded.

At the time of the July 7, 2021 hearing, there were more than one dozen pending motions before the court, some of which were filed more than one year prior to the hearing. Indeed, it is clear from the record that the plaintiff had been attempting to enforce the parties' pendente lite agreement for more than one year, as evidenced by his motions for contempt. A judicial notice

went out to the parties on May 25, 2021, informing them that a remote hearing would be held on July 7, 2021. The defendant's motion to open, however, was filed on July 2, 2021, only five days before the scheduled hearing was to take place. During the hearing, the court explained to the defendant's counsel that his motion to open was not on the list of motions to be considered that day and that the motion to open would be "for another day." Although the defendant believes it would have been more efficient for the court to hear her motion to open first, the court was within its discretion to decide the motions that it chose to hear—especially when those motions were filed long before the defendant's motion to open, which was filed just five days before the date the court was scheduled to hear motions pertaining to the underlying order that the defendant sought to open. See *Edgewood Properties, LLC* v. *Dynamic Multimedia, LLC*, 226 Conn. App. 583, 608, 319 A.3d 123 (2024) ("[t]he trial court has inherent authority to control the proceedings before it to ensure that there [is] no prejudice or inordinate delay" (internal quotation marks omitted)). On this record, we cannot conclude that the court abused its discretion in declining to hear the defendant's motion to open at the July 7, 2021 hearing.

II

The defendant next claims that the trial court, *Moukawsher, J.*, committed plain error when it presided over the parties' dissolution trial after previously holding a *Matza* hearing between the defendant and her prior counsel. Specifically, the defendant contends that, during the *Matza* hearing, her then counsel accused her of lying and that those accusations tainted the court's view of the defendant. Although the defendant did not ask the court to disqualify itself from hearing the dissolution trial, she claims that the court should have recused itself sua sponte because its impartiality

reasonably could have been questioned. We are not persuaded.

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record." (Internal quotation marks omitted.) *Reville* v. *Reville*, 312 Conn. 428, 467–68, 93 A.3d 1076 (2014).

This brings us to the relevant legal principles. Rule 2.2 of the Code of Judicial Conduct provides: "A judge shall uphold and apply the law and shall perform all

duties of judicial office fairly and impartially." Rule 2.11 (a) of the Code of Judicial Conduct instructs that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned . . . ." Our Supreme Court has explained that "[t]he reasonableness standard is an objective one." *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 527, 911 A.2d 712 (2006). "[T]he question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances." (Internal quotation marks omitted.) *State* v. *Ortiz*, 83 Conn. App. 142, 150, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004).

We turn to the relevant facts and procedural history pertinent to the defendant's claim. On June 30, 2022, the defendant's then counsel, Attorney Kaufman, moved to withdraw his firm's appearance on behalf of the defendant. The written motion stated, without further elaboration, that there had been a "breakdown in the attorney-client relationship." A virtual hearing on the motion was held on July 21, 2022, at which time Attorney Kaufman requested a *Matza* hearing be conducted and indicated that such hearings are typically held outside the presence of the opposing party. The plaintiff's counsel did not oppose the motion to withdraw but did voice concerns about the delays that had already occurred, pointing out that the defendant had already been represented by four different law firms. The plaintiff's counsel therefore objected to any continuance of the trial that had been scheduled. At that point, the plaintiff and his counsel left the remote hearing.

Attorney Kaufman then stated to the court: "I find myself in the position where I am compelled to seek mandatory withdraw[al]. Or I am required to withdraw from this matter pursuant to the Rules of Professional Responsibility 1.16 (a) (1). The reason being that my

continued representation will result in a violation of the Rules of Professional Responsibility." Attorney Kaufman continued: "I have been asked and told, instructed to do things in this, in this matter that would, without question, result in a violation of my—of our Rules of Professional Responsibility. I don't know how much detail Your Honor would like me to get into. I don't, as I've said, I have not done a hearing like this before. In nearly twenty years of practice, I've never found myself in this position."

The court then proceeded to address the defendant: "So . . . what Mr. Kaufman's comments reflect is that he's trying to protect your privilege to discuss with him your views on strategy and tactics with respect to the trial. So, what he's telling me is that he believes that he's being asked to do something unethical, in essence, he is not telling me what it is because he doesn't want to prejudice your case. So, what would you say in response?" The defendant responded: "We have a written agreement, and I do not believe there's any part of that written agreement that I have crossed or not complied with. I hear that Attorney Kaufman is saying that I asked him to do something, which, I guess, would be unethical. And I do not know what he is pointing to to indicate that. My work with him has been very, very different than the work with my previous two lawyers who were not very active on the case at all. I'm not aware of any disagreement. Our last interactions were regarding the attestation. I was given an attestation review file on Sunday morning and on Monday I came back. I read their advice on three of those questions and I came back with corrections. And when I came back with the corrections is when Attorney Kaufman said he would not be filing them and that he was, you know, would not work on the case any longer."

Because the defendant told the court that she did not understand the basis for counsel's motion to withdraw, the court offered counsel a few minutes to speak

with the defendant off the record. Attorney Kaufman explained to the court that his firm had already engaged in this conversation with the defendant but that he agreed that it was a good idea to take five minutes to discuss the issues again with the defendant.

Once the hearing resumed, the court allowed Attorney Kaufman and the defendant to further address the court. The court proceeded to ask Attorney Kaufman: "[I]f the trial goes forward and you follow the instructions of your client, would there be a moment in which you believe the rules of practice would require you to make a disclosure to the court that would damage your client?" Attorney Kaufman responded: "I believe—so, Your Honor, the short answer is, yes. But I think I want to add that, before the trial even starts, I would be in violation of the Rules of Professional Responsibility before the trial even starts." At the conclusion of the hearing, the court stated that, "[b]ecause I'm hearing completely opposite versions of what this is all about. Totally opposite versions. . . . I will have to take into account what both of you have said and get you a decision on it as soon as possible."

Later that day, the court, by written order, granted Attorney Kaufman's motion to withdraw. The order provided in relevant part: "Counsel for [the defendant] requests to withdraw from the case. They say that the attorney-client relationship is broken. More important, they assert that they would be ethically obliged if the case goes forward with them in it to take steps that might severely prejudice their client. [The defendant] objects to her lawyers withdrawing. She says there is no such issue in the case and that the disagreement is purely about [the defendant] disagreeing with her lawyers' strategy. Even if the issues between [the defendant] and her lawyers is only a strategy disagreement, the court was convinced at its hearing on the motion that the disagreement is so fundamental as to mean

[the defendant] would be better served by not having a lawyer than by having lawyers she will battle with throughout the trial. And if it's something more—as counsel vehemently asserts—it could severely prejudice her case to have a lawyer who may be compelled to by the Rules of Professional Conduct to make prejudicial disclosures to the court before or during trial." Accordingly, the court found that counsel had good cause to withdraw.

Subsequently, a trial on the parties' dissolution was held before Judge Moukawsher, at which the defendant was represented by new counsel. At no point during or after the *Matza* hearing did either party request that Judge Moukawsher recuse himself. On February 2, 2023, the court rendered judgment dissolving the parties' marriage and issued various financial orders.

The defendant claims that Judge Moukawsher committed plain error when he proceeded to try the parties' dissolution on the merits after previously holding a *Matza* hearing between the defendant and Attorney Kaufman. The defendant contends that Judge Moukawsher was necessarily exposed to harmful information by presiding over the *Matza* hearing. Although she concedes that there are no cases holding that the judge who conducts a *Matza* hearing may not preside over a subsequent dissolution trial, she nevertheless argues that the potential for prejudice, or at least the appearance of impropriety, is obvious.

We conclude that the plaintiff has failed to demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. See, e.g., *Marafi* v. *El Achchabi*, 225 Conn. App. 415, 438, 316 A.3d 798 (2024). The defendant essentially advocates for a per se rule that a judge be required to recuse himself or herself from presiding over subsequent proceedings of a party if that party's

counsel requests a *Matza* hearing. Indeed, after requesting a *Matza* hearing, the defendant contends that the judge is now tainted by the request and by any hearing that may take place and will be unable to fairly adjudicate subsequent proceedings involving that party. The defendant's argument ignores, however, the fact that "judges are regularly faced with the task of disregarding irrelevant and possibly prejudicial evidence and making a decision based exclusively on the evidence admitted at trial and the applicable law." *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 58, 634 A.2d 870 (1993). "[J]udges are expected, more so than jurors, to be capable of disregarding incompetent evidence"; *Doe* v. *Carreiro*, 94 Conn. App. 626, 640, 894 A.2d 993, cert. denied, 278 Conn. 914, 899 A.2d 620 (2006); and we have held that "[o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." (Internal quotation marks omitted.) *In re Omar I.*, 197 Conn. App. 499, 571, 231 A.3d 1196, cert. denied, 335 Conn. 924, 233 A.3d 1091, cert. denied sub nom. *Ammar I.* v. *Connecticut*,    U.S.    , 141 S. Ct. 956, 208 L. Ed. 2d 494 (2020).

Contrary to the defendant's contention, we are not persuaded that the facts of this case would cause a reasonable person to question Judge Moukawsher's impartiality. The record reflects that, during the *Matza* hearing, Attorney Kaufman refrained from divulging any specific information regarding the reasons why he felt that his representation of the defendant might place him in violation of the Rules of Professional Responsibility. Moreover, in his order on Attorney Kaufman's motion to withdraw, Judge Moukawsher in no way indicated that he believed Attorney Kaufman's representations

over those of the defendant and instead stated that he was granting the motion because—regardless of whose representations were accurate—the conflict between the defendant and her counsel could prejudice her case.

But even if we assume that it was error for Judge Moukawsher not to recuse himself from the dissolution trial after presiding over the *Matza* hearing, we would be unable to conclude that the error was so obvious as to be not debatable. The defendant herself concedes that there are no cases holding that a judge is required to recuse himself or herself under these circumstances. To the contrary, the authority weighs against this proposition. This court has explained that "[t]here is nothing extraordinary about a judge who has presided previously over a proceeding concerning a party hearing another case involving that same party." *Senk* v. *Senk*, 115 Conn. App. 510, 516, 973 A.2d 131 (2009). And our Supreme Court has acknowledged that an opinion held by a judge as a result of what the judge learned in an earlier proceeding need not necessarily be characterized as bias or prejudice. See *In re Heather L.*, 274 Conn. 174, 178, 874 A.2d 796 (2005), citing *Liteky* v. *United States*, 510 U.S. 540, 551, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994); see also *In re Omar I.*, supra, 197 Conn. App. 571. Notably, the commentary to Rule 2.11 of the Code of Judicial Conduct, which addresses recusal, similarly recognizes that "[Rule 2.11] does not prevent a judge from relying on personal knowledge of historical or procedural facts acquired as a result of presiding over the proceeding itself." Code of Judicial Conduct, Rule 2.11, commentary (5). On the basis of the record before us, we conclude that the defendant has not "met the stringent standard for relief pursuant to the plain error doctrine"; (internal quotation marks omitted) *Prescott* v. *Gilshteyn*, 227 Conn. App. 553, 581,      A.3d (2024); and, accordingly, the defendant's plain error claim fails.

### III

The defendant next claims that the trial court made credibility determinations on improper bases. Specifically, she contends that the court improperly (1) applied the missing witness rule and (2) relied on a prior court's credibility findings. We disagree.

We begin by setting forth our standard of review and the relevant legal principles pertaining to the defendant's claim. Whether the court properly applied the " 'missing witness' " rule is a question of law over which our review is plenary. *Watson Real Estate, LLC* v. *Woodland Ridge, LLC*, 187 Conn. App. 282, 295, 202 A.3d 1033 (2019). To the extent we are called upon to review the trial court's factual findings, we review them for clear error. See *Hammel* v. *Hammel*, 158 Conn. App. 827, 832, 120 A.3d 1259 (2015). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Fogel* v. *Fogel*, 212 Conn. App. 784, 788, 276 A.3d 1037 (2022). "Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 508, 4 A.3d 288 (2010).

### A

We first address the defendant's claim that the court improperly applied the missing witness rule. "For

decades, Connecticut recognized the . . . missing witness rule, which sanctioned a jury instruction that [t]he failure of a party to produce as a witness one who [1] is available and [2] . . . naturally would be produced permits the inference that such witness, if called, would have exposed facts unfavorable to the party's cause. . . . That instruction . . . is now, for various policy reasons, prohibited by statute in civil cases; General Statutes § 52-216c; and by [Supreme Court] precedent in criminal cases [see *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000)]. . . . [H]owever . . . [a]lthough § 52-216c and *Malave* restricted the means by which the trier of fact is apprised of its ability to draw an adverse inference, it is clear that it remains permitted to do so. . . . This inference . . . is a permissive rather than a mandatory one—that is, one which the [trier of fact] at all times is free to accept or to reject . . . .§ (Citations omitted; footnote omitted; internal quotation marks omitted.) *Watson Real Estate, LLC* v. *Woodland Ridge, LLC*, supra, 187 Conn. App. 295–96.

The following procedural history is relevant to the defendant's claim. During the dissolution trial in the present case, in the context of explaining the cause of the marital breakdown, the defendant claimed that she experienced domestic violence at the hands of the plaintiff. She testified, among other things, that the plaintiff physically abused her several times per year and verbally abused her continually. She testified that the abuse included, inter alia, the plaintiff's attempt to strangle her and pick her up and throw her on her neck. She also said that he grabbed her pocketbook, which twisted her neck. The defendant testified that one of these incidents occurred in front of the parties' adult daughter. She also described verbal abuse, such as being yelled at and called names, sometimes in front of friends, colleagues,

and their daughters. The plaintiff denied abusing the defendant. Although he acknowledged that they argued, sometimes in front of their children, he denied any physical abuse. To the contrary, he testified that the defendant had an alcohol abuse problem and that there were times that she would become physically out of control, including toward the plaintiff.

At one point during the hearing, just prior to a lunch break, the court stated: "I wanted to say before we [recessed] that I've been struck by the strong, strong contrast between the two witnesses with respect to this question of very serious claims of—of domestic violence. And those have a very serious impact if true, and also, they have a very serious impact on the credibility of the two parties. And I don't—I couldn't find the—your witness list, [defendant's counsel]. I have read . . . [the] witness list [of plaintiff's counsel]. I'm just missing it. But the point is that I don't note that anyone has corroborating testimony offered or listed as a potential piece of evidence in the case with regard to these incidents. There's one in which I—the name Shanna came up as a—in this incident with the choking and the refrigerator incident. And that person was an adult then and is an adult now I assume. But these are very serious allegations, and they have significance in terms of credibility as well. So, the parties should consider whether they—what I'm supposed to do if there's no other evidence on these questions. And I want you to know that it's a serious enough matter that if the parties need time or other accommodations to offer any further witnesses, I'm open to it. But if they—if they don't do it, then they have to consider to—to explain to me in argument ultimately as they—why there was no other evidence on it. I just don't want you to think I'm pushing you to go forward and not—not have evidence that's on such an important matter as this. So, think about that over the break, too."

After the luncheon break, the defendant's counsel indicated that the defendant was not prepared to call her daughter, who was purportedly in therapy because of the parties' divorce. The defendant's counsel then indicated that he could potentially call the defendant's cousin to testify remotely from Massachusetts. The court stated: "It's up to you to decide whether the witness is worth it, so if—if you have some corroborating testimony about the severity—I mean, these  .  .  . things that were described were extremely severe. And, if you have corroborating testimony about that, it would be important to me. But, if you had—if somebody is going to come on and testify that they argued or that there was some sort of mild incident or something it wouldn't have the impact that—that you might desire. So, it's up to you to decide what testimony you want to put on ultimately.  .  .  . [T]here's a very important judgment call I have to make here. If these things happened as described, they're very serious. If they—if they aren't true, that's very serious too. And, if [the plaintiff] was lying about it, that's very serious. If he's telling the truth and your client's lying about it, that's very serious. That's why this is—this is a very—a very serious, important aspect of the case because there's really a dramatic contrast between these parties on this subject. So, I wanted you to understand that, and—and then, you can decide what to do about it. But I have to make a judgment  .  .  .  ."

On February 2, 2023, the court issued a memorandum of decision dissolving the parties' marriage. The court explained that the parties disputed how to divide the $665,000 net proceeds held in escrow from the sale of their former marital home, in addition to whether the defendant is the beneficiary of a family trust with "around $1.4 million in assets." It noted that the defendant also sought financial compensation for abuse during the marriage.

The court ultimately found the defendant not credible as a witness. The defendant had claimed that she had disclaimed any interest in the subject trust and that she instead had received only approximately $10,000 a year as a fee for administering the trust. The court did not believe her. The court noted that "[t]he supposed disclaimer only surfaced deep into the litigation. It is handwritten. It wasn't notarized or witnessed. It is patently convenient, and she says she would have produced it earlier, but it was in the marital home, and she had no access to it. Why then didn't she retrieve it when, while [the plaintiff] was away, she backed a moving truck up to the house and made off with a truckload of furniture?" The court also found important the fact that "the tax documents she swore to be true each year listed her as beneficiary and showed the payments [from the trust] as benefits to her even though the forms had a place for her to report the payments to her as fees." The court stated: "The court chooses to believe them, not her self-serving current testimony. And it does so because of the facts but also from the court's judgment of the credibility of the totality of her testimony, her demeanor, and her unreasonable litigation conduct labelled already by another judge as 'well outside the realm of good faith and fair dealing.' "

As to the claims of abuse, the court noted that, "[d]espite earlier admitting [that] the parties had just fallen out of love and that both parties contributed to the breakdown of the marriage, [the defendant] made shocking claims at trial that [the plaintiff] physically abused her several times a year, including repeatedly throwing her to the floor and, on at least one occasion, strangling her in front of her daughter." The court stated: "If the court believed these claims, it would certainly tell in terms of the court's orders. But it doesn't believe them. The court pressed [the defendant] to support those claims with some other evidence. She declined

to call her daughter. Instead, she called family members who said [the plaintiff] has a temper. Reportedly, during their thirty years of marriage he threw some souvenirs at her and knocked a hat off her head during a New York trip. On another hotly disputed occasion, she struck his car with hers and then he furiously struck her car with his. But if [the plaintiff] was so brutally and repeatedly violent—even knowing domestic violence is often hidden—more evidence would likely be found over the course of thirty years than what she presented. It is a big thing to take [the defendant's] word about what happened on faith when, as already noted, the court has other reasons to doubt that word." The court subsequently denied the defendant's claim for alimony.

The defendant claims that the court improperly applied the missing witness rule. She claims that, in rejecting her claim that the plaintiff abused her, the court noted that it had pressed the defendant to support the claims with other evidence, including by calling her daughter, but she declined to do so. She claims that, because the parties' daughter could have been called by either party, the trial court erroneously held the defendant's decision not to call her daughter against her. We disagree.

Although the defendant endeavors to characterize the court's decision as an improper application of the missing witness rule, it is clear that the court did not draw an "adverse inference" as that term is understood in the context of the missing witness rule. As the plaintiff points out, the trial court did not state it was making an adverse inference and was never asked to do so by either party. The court did not have occasion to inquire as to the relative availability of the witnesses or weigh the applicability of the missing witness rule. Rather, the court's decision made clear that the defendant's self-serving testimony, without the benefit of any corroborating evidence, was not credible. The court merely used the defendant's failure to call her daughter as one

example of her failure to corroborate her allegations of physical abuse. It was properly within the purview of the trial court to find the defendant's testimony not credible without corroborating evidence. See, e.g., *Davey B.* v. *Commissioner of Correction*, 114 Conn. App. 871, 878–79, 971 A.2d 735 (2009). Thus, the defendant's claim that the court improperly applied the missing witness rule is without merit.

B

As a final matter, the defendant claims that the court improperly relied on a prior court's credibility findings in adjudicating the parties' dissolution. We are not persuaded. Although the defendant contends that Judge Moukawsher's judgment was improperly based on the credibility determinations that Judge Shay made in his August 17, 2021 decision on the plaintiff's amended motion for contempt and motion for injunctive relief, her argument is belied by the court's memorandum of decision. The court's memorandum of decision is clear that it chose to believe certain documentary evidence over the defendant's self-serving testimony based on *its own* observation of "the totality of her testimony, her demeanor, and her unreasonable litigation conduct." Although the court noted—quoting Judge Shay's August 17, 2021 decision—that another judge had described her litigation conduct as being "well outside the realm of good faith and fair dealing," its comment, at best, was the court's recognition that its observations confirmed the conduct observed by a prior judge. Although the defendant attempts to label this as improper, we have found nothing in our case law to support her contention. Accordingly, the defendant's claim fails.

The judgment is reversed with respect to the award of attorney's fees and the case is remanded for a new hearing on the plaintiff's amended motion for contempt

for the limited purpose of determining whether the plaintiff was entitled to an award of attorney's fees; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.